UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUAN JOSE ARREDONDO, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-44 |
| | § | |
| ECOLAB INC.; dba NALCO ENERGY | § | |
| SERVICES LP, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending is Defendant's Motion for Summary Judgment. (D.E. 19). Plaintiff brings this suit against his former employer, asserting a single claim alleging retaliatory discharge from his employment in violation of the Family Medical Leave Act ("FMLA"). (D.E. 1). In its Motion for Summary Judgment, Defendant argues Plaintiff is not protected by the FMLA and voluntarily abandoned his job by violating the company's no call/no show policy. As set forth below, the undersigned recommends the Motion be **GRANTED**.

## I.   BACKGROUND

Plaintiff was employed by Defendant as a truck driver from October 2005 through his termination on June 14, 2013. Defendant reports Plaintiff had an extensive history of being absent from work without giving sufficient notice. (D.E. 33).[1]   Specifically,

---

[1] Plaintiff objects to three affidavits filed by the Defendant in support of the motion because they are unsworn and not based on personal knowledge. (D.E. 24, Pages 5-7). Plaintiff further

Plaintiff's immediate supervisor, Oscar Martinez, avers Plaintiff missed approximately one day per week during the year prior to his termination.  (D.E. 33).  Further, on April 9, 2013, Plaintiff received a documented verbal warning from Defendant's Operations Supervisor, Raymond Carpenter, regarding his no call/no show absence from work in March 2013. (D.E. 28, D.E. 28-1 and D.E. 26-1, Page 29).  The warning also outlines Plaintiff's frequent failure to notify his supervisors he would be absent as well as his excessive absenteeism or tardiness.  (D.E. 28, D.E. 28-1, and D.E. 26-1, Page 29).

Plaintiff acknowledges he received the verbal warning.  (D.E. 26-1, Page 29). Plaintiff further acknowledges at least two of his supervisors counseled him in 2013 regarding the importance of providing adequate advanced notice prior to missing work. (D.E. 26-1, Page 25, D.E. 24-3, D.E. 26-10, and D.E. 26-11).  Plaintiff responds he has frequently missed work, although he is uncertain as to the exact number of days, because of his various medical ailments and to take his father to dialysis.  (D.E. 20-1, Pages 10, 14, 16, 17-19, 23-25).  Plaintiff further expressed difficulty in being able to provide advance notice for unforeseen medical issues.  (D.E. 26-1, Pages 24-25).

---

objects to all of the documents attached to the affidavits because they are not supported by the affiant's personal knowledge and/or a business record affidavit.  (D.E. 24, page 7-8).  Plaintiff's objections are **OVERRULED**.  Defendant has now re-filed the affidavits to correct the inadvertent omission of the required language for a sworn declaration.  (D.E. 27, D.E. 28 and D.E. 33).  Further, the affiants specifically aver the information set forth in the affidavits is based on their own personal knowledge.  As to the attached documents, a business record affidavit is not necessary for non-hearsay as outlined by the Defendant.  (D.E. 25, Pages 22-23); Fed. R. Evid. 801.  The undersigned also notes Plaintiff relies on one of the documents he objects to in his own Response, specifically the termination notice attached to Raymond Carpenter's affidavit. (D.E. 24-2).  Further, it appears Plaintiff was also presented with and questioned about Defendant's operations manual and his verbal warning during his deposition and both were attached as exhibits.  (D.E. 26-1, Pages 26-27 and 29).

While Plaintiff advances in his Response that he was hospitalized for a serious cardiovascular issue on or about May 30, 2013, that he provided these medical records to Mr. Carpenter, and that he provided both Mr. Carpenter and Mr. Martinez with written notices from his treating physicians prior to his termination showing that he could not return to work until June 17, 2013, Plaintiff does not cite to any summary judgment evidence in support of these briefing assertions.  (D.E. 24, Page 4).[2]

However, the undersigned reviewed Plaintiff's deposition testimony where he stated that his physicians had provided him with a doctor's excuse, which Plaintiff provided to Mr. Martinez on May 20, 2013, stating he should not be working from May 20, 2013 through June 17, 2013, that he told Mr. Martinez that he had been in the hospital and his doctors were going to run additional tests, and "[t]hat I was going to be under a doctor's care for a couple of days or however long it was going to take."  (D.E. 24-1, Pages 11-12 and 16).  Plaintiff stated he believes he worked one or two days during the week of May 20, 2013, but he was uncertain if he did.  (D.E. 24-1, Page 10).

Plaintiff also stated he told Mr. Carpenter in person the week before his termination that he "was going to need another week off."  (D.E. 24-1, Page 12).

[2] As discussed in more detail below, Plaintiff has failed to provide any treatment records, affidavits or deposition testimony from his treating physicians, or any other evidence regarding his medical ailments and his treatment other than his own limited deposition testimony. Therefore, it is unclear as to what Plaintiff was being treated for, how long the treatment lasted, and whether Plaintiff was in fact restricted from work and for how long. It is even unclear as to how many times Plaintiff was hospitalized in May 2013.  Plaintiff states during his deposition that he was hospitalized on May 16-17, 2013, but in his Response, states he was hospitalized on May 30, 2013.  (D.E. 24, Page 4).  However, there is no evidence presented in his Response substantiating that he was hospitalized on May 30, 2013, as Plaintiff cites only to deposition testimony regarding his May 16-17, 2013 hospitalization.  (D.E. 24, Pages 16-26 and D.E. 24-1, Page 5).

Plaintiff also stated he texted Mr. Carpenter "once or twice to let him know that I was going to – that I wasn't going to be able to make into [work] because my – because I had been sick and that I was feeling sick and that I needed to get my results." (D.E. 24-1, Page 13). Plaintiff also stated he communicated to both Mr. Carpenter and Mr. Martinez that he could return to work on or about June 17, 2013 and kept in contact via telephone with Mr. Martinez every two days between May 20, 2013 and June 17, 2013. (D.E. 24-1, Pages 12 and 16).

According to Defendant, on June 10, 2013, Plaintiff reported to work and then texted Mr. Carpenter that he did not feel well. (D.E. 28). Plaintiff was then advised to go home and told he should have informed his supervisors sooner if he was not feeling well enough to work. (D.E. 28). Mr. Carpenter also avers Plaintiff texted back and stated he did not have a doctor's excuse for not working and that Plaintiff then left work about thirty minutes after arriving. (D.E. 28 and D.E. 33).

Plaintiff did not report to work on June 11, June 12 or June 13, 2013. (D.E. 28 and D.E. 33). On June 12, 2013, Mr. Carpenter drafted Plaintiff's termination notice, intending to give the notice to Plaintiff upon his return to work. (D.E. 24-2, D.E. 28, D.E. 28-2). However, when Plaintiff was absent for three consecutive days, Defendant determined Plaintiff had abandoned his job under Defendant's "No Call/No Show" policy after three, consecutive absences and the notice was not delivered. (D.E. 28). Both Mr. Carpenter and Mr. Martinez aver Plaintiff did not notify them or any of Defendant's other employees that he would not be reporting to work on June 11, June 12, or June 13, 2013. (D.E. 28, Page 3 and D.E. 33, Page 4). The undelivered termination notice indicates

Plaintiff was absent from work on May 17, 20, 22, and 28, 2013 as well as June 3, 4, 5, 6, 7, 10, 11, and 12, 2013 and that Plaintiff failed to call in for the absences on May 20 and 22, 2013 as well as those on June 11 and 12, 2013.  (D.E. 24-2).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant.  *Caboni v. General Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).  The substantive law identifies which facts are material.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Id*.

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The moving party bears the burden of identifying those portions of the record he or she believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden then shifts to the non-movant to show the existence of a genuine fact issue for trial.  *Id*.; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-97 (1986).

The non-movant cannot merely rest on the allegations of the pleadings or on unsubstantiated, subjective beliefs. *Anderson*, 477 U.S. at 248-49.   Plaintiffs must establish there are material, controverted facts precluding summary judgment.   *Id*. Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003)("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.")(citations omitted); *see also Anderson*, 477 U.S. at 249-52.   Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322-23.   Where the non-movant fails to present evidence to support his or her claims, there can be no genuine issue of material fact because of the complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial.  *Id.* at 323.

## III.   ANALYSIS

The FMLA was enacted "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  29 U.S.C. § 2601(b)(2).  The "FMLA…protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006).

Plaintiff has brought a retaliation claim under the FMLA alleging he was discharged for requesting and taking FMLA leave throughout his employment, specifically during the months of May and June 2013. The Fifth Circuit applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green* when analyzing retaliation claims under the FMLA. 411 U.S. 792 (1973); *see also Wilson v. Noble Drilling Services, Inc.*, 405 Fed. App'x 909, 912 (5th Cir. 2010). To establish a *prima facie* case for FMLA retaliation, Plaintiff must show (1) he was protected under the FMLA; (2) suffered an adverse employment action; and (3)(a) was treated less favorably than a similarly situated employee who had not requested leave or (b) the adverse decision was made because he took FMLA leave. *Id.* (citation omitted). Once an employee succeeds in making a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action taken against the Plaintiff. *Id.* If Defendant satisfies this burden, the burden shifts back to the employee who must prove the legitimate reasons offered by the Defendant were not its true reasons but were a pretext for discrimination. *Id.* (*citing Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

Plaintiff suffered an adverse employment action satisfying the second requirement for retaliation. However, Defendant asserts Plaintiff fails to establish the first and third requirements. (D.E. 19, Page 19). Specifically, Defendant asserts Plaintiff (1) did not engage in any protected activity and (2) has submitted no evidence demonstrating Defendant terminated his employment because he sought or took FMLA leave. (D.E. 19, Page 19). Defendant further asserts that even if Plaintiff has established a *prima facie*

case, it has provided a legitimate reason for terminating Plaintiff's employment and Plaintiff cannot establish the reason is pretextual. (D.E. 19, Pages 19-20).

Plaintiff alleges he engaged in FMLA protected activity by requesting and taking leave to care for his serious medical ailments in May and June 2013. In contrast, Defendant argues Plaintiff never sought FMLA protected leave, merely calling in sick and/or not calling in sick and failing to show up for work as scheduled, both of which were insufficient to invoke FLMA protection. Defendant further asserts Plaintiff did not give sufficient notice to apprise Defendant of his intent to take FMLA leave and Plaintiff did not suffer from a "serious health condition," both of which are required to qualify for FMLA protection. (D.E. 19, Pages 6-15).

Defendant cites to Plaintiff's deposition testimony where Plaintiff stated that while he was fully aware of Defendant's short and long term disability leave, he never applied. (D.E. 19, Page 11 and D.E. 20-1, Pages 18-19). Plaintiff further stated that from January 1, 2011 through the end of his employment in mid-June 2013, he did not apply for leave of any kind and that when he reported he was sick, he never asked any of his supervisors for leave from his job. (D.E. 20-1, Pages 18-19). Plaintiff also stated that at no point during 2013 prior to his termination did he seek unpaid leave. (D.E. 20-1, Page 25).

Plaintiff's advancement in his Response that, "The initial feedback the plaintiff received from Mr. Carpenter and Mr. Martinez appeared to indicate that everything was in order and nothing further was needed from him to have his time off from work protected by the Family Medical Leave Act ("FMLA")," is belied by Plaintiff's deposition testimony above that he never sought leave of any kind from any of his

supervisors and he did not know of any of his rights under the FMLA prior to his termination.  (D.E. 26-1, Pages 18-20 and 28-29).

Plaintiff further responds that Defendant admitted it its Answer that Plaintiff is protected by the provisions of the FMLA.  (D.E. 24, Page 11).  Contrary to Plaintiff's assertion, Defendant does not concede in its Answer that Plaintiff is protected by the provisions of the FMLA.  (D.E. 10, Page 2).  Only Plaintiff's argument that his communications to his supervisors were sufficient notice of his intent to take FMLA leave has merit.  (D.E. 24, Pages 14-27).

"Although an employee need not use the phrase 'FMLA leave,' she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA." *Lanier v. Univ. of Texas Southwestern Med. Ctr.*, 527 Fed. App'x 312, 316 (5th Cir. 2013).  The Fifth Circuit does "does not apply categorical rules for the content of the notice" and instead focuses on what is "'practicable' based on the facts and circumstances of each individual." *Id.* (*citing Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762-64 (5th Cir. 1995)); *see also* 29 C.F.R. § 825.303(b).  "The employer is not required to be clairvoyant," but "may have a duty to inquire further if statements made by the employee warrant it." *Id.* (*citing Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998)).  "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b).  Further, "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.*

Here, Plaintiff stated during his deposition that his physicians had provided him with a doctor's excuse, which he provided to Mr. Martinez on May 20, 2013, stating he should not be working from May 20, 2013 through June 17, 2013, that he told Mr. Martinez that he had been in the hospital and his doctors were going to run additional tests and "[t]hat I was going to be under a doctor's care for a couple of days or however long it was going to take" and that he kept Mr. Martinez updated every two days. (D.E. 24-1, Pages 11-12 and 16). Plaintiff further stated he told Mr. Carpenter in person the week before his June 14, 2013 termination that he "was going to need another week off." (D.E. 24-1, Page 12). In contrast, both Mr. Carpenter and Mr. Martinez aver Plaintiff did not notify them or any of Defendant's other employees that he would not be reporting to work on June 11, June 12, or June 13, 2013. (D.E. 28, Page 3 and D.E. 33, Page 4).

Given the discrepancies, the undersigned finds there is a fact issue as to whether Plaintiff's notice was sufficient and declines to resolve matters of credibility during the summary judgment phase. While the undersigned observes that an employee must do more than notify the employer that he or she is sick and that Plaintiff stated at his deposition that he never sought leave, there is a fact issue as to whether or not there was sufficient notice as Plaintiff "need not use the phrase 'FMLA leave'" to "reasonably apprise" the Defendant his "request to take time off could fall under the FMLA." *Lanier,* 527 Fed. App'x at 316; *see also Satterfield*, 135 F.3d at 977(When determining whether the FMLA applies, the critical question is whether the information imparted to the employer is sufficient to "reasonably apprise it" of the employee's request to take time off for a serious health condition).

While the undersigned does note there are discrepancies in Plaintiff's testimony as it appears Plaintiff reported to work and/or worked several days during the time he was supposedly restricted from working, Plaintiff's assertions that he informed his supervisors he would need a specific amount of time off because he was under a doctor's care who had restricted him from working for a period of almost a month are sufficient to create a fact issue as to notice for purposes of summary judgment.  (D.E. 24-1, Page 10 and D.E. 28).

However, while the undersigned has determined there is a genuine issue of material fact as to the sufficiency of Plaintiff's notice of his intent to take FMLA protected leave, Plaintiff must also establish his health condition qualified him for FMLA protection in order to survive summary judgment.   In this case, Plaintiff must demonstrate, in addition to sufficient notice, that he had a "serious health condition" that made him "unable to perform the functions" of his position.  29 U.S.C. § 2612(a)(1); *see also Ford-Evans v. United Space Alliance, LLC.*, 329 Fed. App'x 519 (5th Cir. 2009)(citation omitted).  Plaintiff has failed to do so.  Instead, Plaintiff relies solely upon his own deposition testimony as to the seriousness of his ailments and his physician's purported work restrictions.  *Roque v. Natchitoches Parish Sch. Bd.*, 583 Fed. App'x 466, 471 (5th Cir. 2014)(*citing Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.")(citations omitted).

According to the FMLA, a "serious health condition" involves, in relevant part, continuing treatment by a healthcare provider, which includes a period of incapacity of more than three consecutive days or any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  29 C.F.R. §§ 825.113, 114 and 115.  Further, "incapacity" is an inability to work due to a serious health condition, treatment therefore, or recovery therefrom.  *Id.*  "Even with a mild to moderate impairment, an employee is still considered able to perform the functions of her position for FMLA purposes."  *Ford-Evans*, 329 Fed. App'x at 528 (*citing Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997)).  FMLA coverage applies only to health conditions that cause or threaten to cause "incapacitation" and where absence from work is necessary. *Id.* (*citing Mauder*, 446 F.3d at 581-82).

Plaintiff identified four medical ailments he characterized as serious: (1) cardiovascular issues, (2) a stomach infection, (3) low[3] blood sugar and (4) high blood pressure.  (D.E. 1, Page 3).  However, as noted by Defendant, Plaintiff acknowledged his low blood sugar lasted only one day during his May 16-17, 2013 hospitalization, was easily remedied with medication and never reoccurred.  (D.E. 26-1, Pages 17-18 and 28).  Plaintiff further acknowledged he was treated for a stomach infection the same day in May, which was easily remedied with medication and never reoccurred.  (D.E. 26-1, pages 17-18 and 28).

---

[3] Plaintiff originally pled and stated in his Response that he suffered from high, rather than low, blood sugar.  (D.E. 1, Page 3 and D.E. 24, Page 4).  However, during his deposition, Plaintiff stated he had low, rather than high, blood sugar.  (D.E. 26-1, Pages 17 and 28-29).

Additionally, Plaintiff received Department of Transportation ("DOT") physicals every year while working for the Defendant. (D.E. 26-2 to D.E. 26-9). While Plaintiff's high blood pressure and/or cardiovascular issues were reported on several of his DOT physicals, most acutely in 2009 when Plaintiff's employment function capability was listed as restricted subject to medical department approval and indicating further tests were needed, he was listed as fit for any job on his October 15, 2010, October 13, 2011, and October 5, 2012 DOT physicals. (D.E. 26-6, Page 4, D.E. 26-7, Page 3, D.E. 26-8, Page 3, and D.E. 26-9, Page 3). Plaintiff acknowledged he was both honest and candid with the health care professionals administering the physicals and accurately completed the required forms, and that, as of October 5, 2012, his physician advised the DOT and Defendant that there were no limitations on the jobs Plaintiff could perform. (D.E 26-1 Pages 14-17 and D.E. 26-9, Pages 2-31). While Plaintiff stated he was treated for cardiovascular issues during his May 16-17, 2013 hospitalization and received continuous follow-up treatment during the following month, no records have been submitted detailing what he was treated for or the severity of his ailments. Plaintiff further stated that he has not been hospitalized or visited urgent care at any time from June 2013 through August 14, 2014, the date of his deposition. (D.E. 26-1, Page 21).

While Plaintiff asserts his doctors advised him that he could not work during the time at issue in May and June 2013, he has provided no evidentiary support for this assertion other than his own deposition testimony. Plaintiff has not submitted any medical records, treatment notes, affidavits or deposition testimony from his treating physicians or any other expert testimony. Instead, Plaintiff cites only to his limited

deposition testimony regarding his ailments, their severity and the resulting restrictions. Therefore, because Plaintiff has not submitted sufficient evidence in support of his allegations that he had a "serious health condition" entitling him to protection under the FMLA, he cannot sustain a claim for retaliation.  There is no sufficient evidence in the record that any of his ailments qualified as a "serious health condition" rendering him incapacitated and unable to work.  Consequently, Plaintiff has failed to establish he was protected by the FMLA.

## IV.   CONCLUSION

As set forth above, Plaintiff has failed to establish a *prima facie* case of FMLA retaliation because he has failed to submit evidence establishing the severity of his health condition qualified him for FMLA protection.   Accordingly, the undersigned recommends Defendant's Motion for Summary Judgment be **GRANTED**.  (D.E. 19).

ORDERED this 27th day of January, 2015.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).